**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MARK PARSONS, BRANDON BRADLEY,
SCOTT GANDY, ROBERT HELLIN, JOSEPH
BRUCE and JOSEPH UTSLER,

     Plaintiffs,

v.                             Case No. 14-10071

UNITED STATES DEPARTMENT OF JUSTICE
and FEDERAL BUREAU OF INVESTIGATION,

     Defendants.

_____/

### OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

Plaintiffs Mark Parsons, Brandon Bradley, Scott Gandy, Robert Hellin, Joseph

Bruce, and Joseph Utsler, all self-identified "Juggalos," challenge Defendants United

States Department of Justice's ("DOJ") and Federal Bureau of Investigation's ("FBI")

use of the term "hybrid gang" in reference to Juggalos.  Plaintiffs claim that the use of

this term infringes on their First Amendment rights to free association and expression,

and that the term further violates their Fifth Amendment due process rights and is an

arbitrary and capricious state action.  Defendants move to dismiss Plaintiffs' complaint.

On June 23, 2014, the court heard oral arguments on the motion   For the following

reasons, Defendants' motion to dismiss will be granted.

# I. BACKGROUND

## A. General Allegations

What is a Juggalo?  According to the complaint, Juggalos are "fans of the musical group Insane Clown Posse ("ICP")[1] and other bands on ICP's independent record label, Psychopathic Records."  (Dkt. # 1, Pg. ID 2.)  Although some of ICP's music contains "hopeful, life-affirming themes about the wonders of life," other songs fall into the genre of "horrorcore hip hop" which "uses very harsh language to tell nightmare-like stories with an underlying message that horrible things happen to people who choose evil over good."  (*Id.*)  Juggalos often paint their faces to look like clowns, and wear distinctive symbols, including the "hatchetman" logo, which depicts a person with wild hair running with a butcher cleaver in his or her hand.  (*Id.*)  "Many Juggalos embrace 'Juggaloism' as a philosophy, an identity, [and] a way of life.  ICP's lyrics, through their description of a 'Dark Carnival,' address themes of good and evil, heaven and hell, and acceptance and tolerance of others."  (*Id.* at Pg. ID 6.)  Juggalos attempt to live by the "moral code" of the Carnival, and see themselves as social outcasts, striving for acceptance and support from one another.  (*Id.* at Pg. ID 7.)  "Based on these shared values, Juggalos strongly identify with one another and often refer to themselves as a 'family.'"  (*Id.*)  According to Plaintiffs, Juggalos gather and associate with each other in order to listen to ICP's music, share ideas surrounding the music, and

---

[1]ICP is a musical group founded in 1991 and based in Farmington Hills, Michigan.  (Dkt. # 2, Pg. ID 5.)  Its principal members are Plaintiffs Joseph Bruce and Joseph Utsler, who go by the stage names "Violent J" and "Shaggy 2 Dope," respectively.  (*Id.* at Pg. ID 14.)

express their support for the band.  (*Id.* at Pg. ID 6.)  "Organized crime is by no means part of the Juggalo culture."  (*Id.* at Pg. ID 3.)

## B.  The 2011 National Gang Threat Assessment

Plaintiffs' allegations stem from the National Gang Intelligence Center's "2011 National Gang Threat Assessment: Emerging Trends" ("NGTA").  National Gang Intelligence Center, *2011 National Gang Threat Assessment: Emerging Trends,* (2011), available at http://www.fbi.gov/stats-services/publications/ 2011-national-gang-threat-assessment (June 9, 2014) (rendering of URL contains spaces).  The NGTA states that its purpose is to "examine emerging gang trends and threats posed by criminal gangs to communities throughout the United States."  *Id.* at 5.  "It supports US Department of Justice strategic objectives 2.2 (to reduce the threat, incidence, and prevalence of violent crime) and 2.4 (to reduce the threat, trafficking, use, and related violence of illegal drugs)."  *Id.*  The NGTA further states that its data is based on federal, state, local, and tribal law enforcement reporting, as well as information supplied by correctional institutions.  *Id.*

In a section entitled "Non-Traditional Gangs," the 2011 NGTA notes that "[t]he expansion of hybrid gangs—non-traditional gangs with multiple affiliations—is a continued phenomenon in many jurisdictions nationwide."  *Id.* at 22.  The NGTA further observes that hybrid gangs are fluid in structure and size, present in at least 25 states, and that hybrid gang members commit a multitude of street and violent crime, including drug trafficking.  *Id.*  The report identifies Juggalos as a hybrid gang subset, and notes that Juggalo gangs are rapidly expanding into many communities.  Arizona, California, Pennsylvania, and Utah are the only states that recognize Juggalos as a gang, but the

3

NGTA reports that "at least 21 states have identified criminal Juggalo sub-sets." *Id.*

> Most crimes committed by Juggalos are sporadic, disorganized, individualistic, and often involve simple assault, personal drug use and possession, petty theft and vandalism. However, open source reporting suggests that a small number of Juggalos are forming more organized subsets and engaging in more gang-like criminal activity, such as felony assaults, thefts, robberies, and drug sales.

*Id.* at 22–23. The NGTA warns that "Juggalo criminal activity has increased over the past several years and has expanded to several other states. Transient, criminal Juggalo groups pose a threat to communities due to the potential for violence, drug use/sales, and their general destructive and violent nature." *Id.* at 23. The NGTA also noted that Juggalos are known to have members in the U.S. Army and Air Force. *Id.* at 36–37.

### C.  Alleged Harassment of Plaintiffs

Following publication of the 2011 NGTA, Plaintiffs allege that local police departments evidenced an inexplicable and seemingly magnetic attraction to Plaintiffs' activities. For example, Plaintiff Mark Parsons owned and operated a small trucking business, "Juggalo Express LLC." (Dkt. # 1, Pg. ID 7.) His truck is decorated with a large ICP "hatchetman" logo. On July 9, 2013, a Tennessee State Trooper ordered Parsons to stop his truck for a safety inspection. The state trooper asked Parsons if he was a Juggalo, and told Parsons that he had detained him because of the "hatchetman" logo on the truck. (*Id.* at Pg. ID 8.) The trooper further informed Parsons that he believed Juggalos to be a gang because of the DOJ's designation, and asked Parsons whether he had any axes, hatchets, or other chopping instruments in his truck. Parsons

told the trooper that he did not have any such items in his truck, and an hour-long search of the truck and interrogation of Parsons revealed no weapons or contraband.

Plaintiff Brandon Bradley also claims that police stopped him in order to interrogate him about his Juggalo affiliation. (*Id.* at Pg. ID 9.)  In September 2012, a Citrus Hills, California police officer flashed his car's lights and stopped Bradley while he was biking home.  Bradley had visible Juggalo tattoos and was wearing Juggalo merchandise at the time.  Bradley believes that the reason that the officer stopped him is because the officer saw Bradley's Juggalo-related apparel, and assumed he was a member of a gang.  The officer allegedly detained Bradley for fifteen minutes, interrogated him about being a Juggalo, and took notes regarding Bradley's answers. Soon after the incident, an ex-Citrus Hills police officer told Bradley that he had heard about the incident, and that Bradley would have to get his Juggalo tattoos removed if he wanted to be a police officer because the tattoos were gang-related.  Approximately a month later, a Sacramento police officer stopped Bradley, requested Bradley's identification, and asked Bradley if he was a Juggalo. (*Id.* at Pg. ID 10.)  The officer ran a background check on Bradley, and accused Bradley of being in a gang stating that "to be a Juggalo is to be a gang member." (*Id.*)  In a final incident in January 2013, Bradley was walking alone in a bike lane when a police cruiser pulled up behind him and stopped him.  Two officers exited the cruiser and told Bradley that they had noticed the "hatchetman" symbol on his jacket.  They ordered him to stand in front of a guardrail so that they could take pictures of his jacket, face, and tattoos. (*Id.* at Pg. ID 11.)  They questioned Bradley regarding his Juggalo affiliation, and insisted that he was part of a

5

gang.  As a result of these encounters, Bradley often chooses not to express his Juggalo affiliation, or wear Juggalo-related apparel.

Plaintiff Scott Gandy also alleges discrimination on the basis of his Juggalo affiliation.  He claims that in 2012, he visited a U.S. Army recruiting station, and that at the time, he had large ICP tattoos on his chest.  The recruiting officer asked Gandy whether he had any tattoos, and told Gandy that because Juggalos were on the federal government's "gang list," he considered Gandy's tattoos to be gang-related.  The officer questioned Gandy regarding his Juggalo affiliation, and instructed Gandy that he would have to remove or permanently cover his tattoos or the Army would immediately deny his application.  Gandy subsequently spent hundreds of dollars to have his Juggalo tattoos covered with other tattoos.  When he returned to the recruiting station, the officer accepted his application and told Gandy that he would receive consideration. Ultimately, the Army denied Gandy's application.  (*Id.* at Pg. ID 12–13.)

Plaintiff Robert Hellin is currently a corporal in the Army, and has served in Iraq, Afghanistan, and Korea.  He has a number of visible ICP tattoos, but worries that because of the federal government's designation of Juggalos as a hybrid gang, he is in imminent danger of discipline or involuntary discharge from the army.  (*Id.* at Pg. ID 13.)

As mentioned earlier, Plaintiffs Bruce and Utsler are members of ICP.  They claim that on August 20, 2012, they entered into a contract with AEG Live to perform at the Royal Oak Music Theater in Royal Oak, Michigan, for ICP's annual "Hallowicked" event.  On October 8, 2012, the Royal Oak Music Theater cancelled the "Hallowicked" event, informing Bruce and Utsler that its landlord prompted the cancellation.  Upon further discussions with AEG Live and the Royal Oak Music Theater, Bruce and Utsler

6

discovered that the Royal Oak Police Department had asked the Royal Oak Music

Theater to cancel the event, citing the federal Juggalo gang designation as a motivating

reason. (*Id.* at Pg. ID 14.)

On March 21, 2014, after Plaintiffs filed the instant suit, the National Gang

Intelligence Center released its 2013 National Gang Report. Neither Juggalos nor

"hybrid gangs" receive any mention therein. *See generally*, National Gang Intelligence

Center, *2013 National Gang Report* (2014), available at http://www.fbi.gov/stats-

services/publications/national-gang-report-2013/view (June 9, 2014) (rendering of URL

contains spaces).

## II.  STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6)

tests the sufficiency of a complaint's allegations. The court views the complaint in the

light most favorable to the plaintiff and takes all well-pleaded factual allegations as true.

*Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009); *Carrier Corp.*

*v. Outokumu Oyj*, 673 F.3d 430, 400 (6th Cir. 2012). Only a complaint that states a

plausible claim for relief can survive a motion to dismiss, and "[a] claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678–79 (2009).

> Determining whether a complaint states a plausible claim for relief will . . . be
> a context-specific task that requires the reviewing court to draw on its judicial
> experience and common sense. But where the well-pleaded facts do not
> permit the court to infer more than the mere possibility of misconduct, the
> complaint has alleged—but it has not shown—that the pleader is entitled to
> relief.

7

*Id.* at 679 (internal quotation marks, citation, and brackets and omitted). "In

determining whether to grant a [motion to dismiss], the court primarily considers the

allegations in the complaint, although matters of public record, orders, items appearing

in the record of the case, and exhibits attached to the complaint, also may be taken into

account." *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (quotation marks,

citation, and emphasis omitted).

### III.  DISCUSSION

"If Plaintiffs cannot establish constitutional standing, their claims must be

dismissed for lack of subject matter jurisdiction." *Loren v. Blue Cross & Blue Shield of

Mich.*, 505 F.3d 598, 607 (6th Cir. 2007).  The constitutional standing inquiry is

"especially rigorous when reaching the merits of the dispute would force us to decide

whether an action taken by one of the other two branches of the Federal Government

was unconstitutional." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013)

(citation omitted).  "Relaxation of standing requirements is directly related to the

expansion of judicial power." *Id.* (citation omitted).

In order to satisfy constitutional standing requirements, Plaintiffs must show that:

> (1) [they have] suffered an injury in fact that is (a) concrete and particularized
> and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is
> fairly traceable to the challenged action of the defendant; and (3) it is likely,
> as opposed to merely speculative, that the injury will be redressed by a
> favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81

(2000) (internal quotation marks omitted).[2]  Plaintiffs must demonstrate that the

---

[2]Although Plaintiffs also argue that Defendants' alleged classification is
"overbroad," the court notes that the doctrine of overbreadth "creates an exception only

8

challenged action is "not the result of independent action of some third party not before

the court." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citation, ellipsis,

and brackets omitted).

> [When t]he existence of one or more of the essential elements of standing
> depends on the unfettered choices made by independent actors not before
> the courts and whose exercise of broad and legitimate discretion the courts
> cannot presume either to control or to predict . . . it becomes the burden of
> the plaintiff to adduce facts showing that those choices have been or will be
> made in such a manner as to produce causation and permit redressability of
> injury.

*Id.* at 562 (citations omitted).  "[T]he plaintiff need only allege injury that fairly can be

traced to the challenged action of the defendant, and not injury that results from the

independent action of some third party not before the court." *Wuliger v. Mfrs. Life Ins.*

*Co.*, 567 F.3d 787, 796 (6th Cir. 2009) (citation omitted).  The court should exercise

reluctance to "endorse standing theories that rest on speculation about the decisions of

independent actors." *See Clapper*, 133 S. Ct. at 1150.  "Redressability and causation

problems often go hand in hand:  If a plaintiff fails to sue the entity causing its injury, a

judgment is unlikely to do him any good." *United States v. Carroll*, 667 F.3d 742,

745–46 (6th Cir. 2012).

Plaintiffs' complaint fails this crucial threshold test.   Five of the six Plaintiffs

complain of independent actions by third-parties who are *not* currently before the court.

For example, Parsons alleges that while he was stopped at a weigh station operated by

the Tennessee Department of Transportation, an unidentified Tennessee State Trooper

_____

to the prudential standing inquiry," and that the "injury[-]in[-]fact requirement still applies
to overbreadth claims under the First Amendment." *Prime Media, Inc. v. City of
Brentwood*, 485 F.3d 343, 350 (6th Cir. 2007).

questioned him regarding the "hatchetman" symbol on his truck.  (Dkt. # 1, Pg. ID 7.)

Similarly, Bradley complains of conduct by Citrus Heights and Sacramento, California,

police officers who allegedly stopped him on three occasions to ask him questions

about his Juggalo tattoos and merchandise.  (*Id.* at Pg. ID 9–11.)   These allegations

concern local law enforcement authorities in two different states, each of which made an

independent decision to detain and question Plaintiffs.   There is no indication that either

the FBI or DOJ directed state police to detain and question either subject.[3]

Gandy alleges a third-party actor as the culprit of the alleged discriminatory

conduct he experienced as well.  Gandy states that he applied to join the U.S. Army, but

his recruiting sergeant told him that if he wanted his application considered, he would

have to cover his Juggalo tattoos.  Despite having his tattoos covered, Gandy states

that the Army ultimately denied his application.  Again, there is no indication that either

Defendant participated in any of these decisions.  Even assuming *arguendo* that the

Army denied Gandy's application because of his Juggalo tattoos, the court notes that

the Army utilizes detailed regulations which govern acceptable grooming standards for

service members, including the display of any tattoos.  *See* U.S. Dep't of Army, Reg.

670-1, *Wear and Appearance of Army Uniforms and Insignia,* at 10–12 (March 31,

2014); Reg. 601-210, *Active and Reserve Components Enlistment Program*, at 32–33

(Feb. 8, 2011).  Thus, Gandy is unable to plausibly allege that the 2011 NGTA

prompted the Army's decision to deny his application.

---

[3]The court further notes that the NGTA relied in part on the State of California's
recognition of Juggalos as a gang, further complicating Plaintiff Bradley's theory of
causation.  *See* 2011 National Gang Threat Assessment, at 22.

Bruce and Utsler allege at least two third-party actors who were responsible for their injury: the Royal Oak Music Theater and the Royal Oak Police Department. According to these Plaintiffs, the Royal Oak Music Theater decided to cancel their "Hallowicked" concert event following the Royal Oak Police Department's request. Although Bruce and Utsler allege that the Royal Oak Police Department cited the DOJ's report in asking the Theater to cancel the "Hallowicked" concert, the complaint does not allege that the DOJ or FBI directed either party to do so. Instead, the complaint reveals that two independent actors, neither of whom are present in the instant law suit, decided to cancel the event.

The court's review of the NGTA illustrates the voluntary nature of this conduct by independent actors. The self-identified purpose of the National Gang Intelligence Center is "to operate as a repository and dissemination hub for gang intelligence." *Id.* In order to accomplish this goal, the NGTA utilizes state, local, and federal voluntary reporting by police departments across the country to identify new and emerging gang trends. National Gang Threat Assessment at 5. The NGTA does not recommend any particular course of action for local law enforcement to follow, and instead operates as a descriptive, rather than prescriptive, assessment of nation-wide gang trends.

The court is reluctant to "endorse standing theories that rest on speculation about the decisions of independent actors." *See Clapper*, 133 S. Ct. at 1150. And where, as here, reaching the merits of Plaintiffs' allegations would force the court to decide whether actions by the executive branch are unconstitutional, the standing inquiry is especially rigorous. *Id.* at 1147. Although the complaint alleges that the 2011 NGTA motivated the third-party actors discussed above, each actor appears to have exercised

11

discretion in deciding whether to:  question Parsons and Bradley, inform Gandy that he was ineligible for Army consideration, or  cancel Bruce's and Utlser's event.  Because any adjudication on the merits would involve speculation about the decisions of these independent actors, the court finds that Plaintiffs have not properly alleged constitutional standing to bring their claims before the court.

This conclusion is further illustrated by the redress Plaintiffs seek in their complaint.  Plaintiffs request, *inter alia*, an order:  declaring the 2011 NGTA's discussion of Juggalos as a hybrid gang to be unlawful, requiring the DOJ to expunge and eliminate criminal intelligence information about Juggalos from its database, and enjoining the DOJ and FBI from gathering criminal intelligence information about the Juggalos "until the DOJ has sufficient facts to give a trained law enforcement or criminal investigative agency officer, investigator or employee a basis to believe that Juggalos, as a whole, are involved in a definable criminal activity or enterprise."  (Dkt. # 1, Pg. ID 37.)  Although Plaintiffs argue that partial redressability is sufficient to satisfy the constitutional standing inquiry, it is unclear how any of Plaintiffs' requested remedies would redress the damage they claim.  An injunction mandating the retraction of the 2011 NGTA, even if warranted, would not compel or enjoin any action by the various independent actors who allegedly caused Plaintiffs' injuries, and who are not parties to this action.  As Defendants argue, "there are a multitude of state agencies and media reports that have described Juggalo gang activity long prior to the 2011 [NGTA] and would continue to do so regardless of the outcome of this action.  (Dkt. # 27-1, Pg. ID 286.)  The court finds that it is "merely speculative" to assert that Plaintiffs' alleged injury would be redressed by a decision in their favor.  *Laidlaw*, 528 U.S. at 181.

12

This leaves Hellin.  Unlike the other five Plaintiffs, Hellin does not allege that he has suffered any injury at all (at least not yet).  He claims that he is currently a corporal in the U.S. Army and that he has visible ICP-related tattoos.  According to the complaint, he fears that he will suffer discipline or involuntary discharge from the Army at some point in the future because of his Juggalo affiliation.  These allegations are insufficient to grant Hellin constitutional standing.  "[W]e have repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and that allegations of *possible* future injury are not sufficient."  *Clapper*, 133 S. Ct. at 1147 (emphasis in original).  Hellin's injury relies on his fear that the Army *may* take action against him *at some point in the future*, despite the fact that by his own allegations, he has been a soldier for six years and has served with honor in Iraq, Afghanistan, and Korea.  There is no indication that Hellin's discharge is "certainly impending" (let alone, impending at all), and Hellin's allegations must also be dismissed for failing to properly allege constitutional standing to bring his suit.[4]

---

[4]During oral argument, Plaintiffs argued for the first time that their count seeking declaratory judgment should survive, citing *Muniz-Muniz v. U.S. Border Patrol*, 741 F.3d 668 (6th Cir. 2013), as support.  However, the *Muniz-Muniz* court expressly declined to consider the defendant's standing arguments, leaving resolution of the matter to the district court on remand.  *Id.* at 674.

Further, by failing to raise this issue in their brief, Plaintiffs have forfeited this argument.  *United States v. Olano*, 507 U.S. 725, 733 (1993); *see also Automated Solutions Corp. v. Paragon Data Sys., Inc.*, No. 13-3025/3058, --- F.3d ---, at *22 (6th Cir. June 25, 2014).

## IV.  CONCLUSION

Because Plaintiffs are unable to properly allege constitutional standing to bring

this action, the court finds it unnecessary to reach Defendants' remaining arguments in

support of their motion to dismiss.  Accordingly,

IT IS ORDERED that Plaintiffs' complaint is DISMISSED.


 s/Robert H. Cleland                                  
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  June 30, 2014


I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, June 30, 2014, by electronic and/or ordinary mail.

 s/Lisa Wagner                                        
Case Manager and Deputy Clerk
(313) 234-5522

S:\Cleland\JUDGE'S DESK\C2 ORDERS\14-10071.PARSONS.MotDismiss.jac.wpd