# UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| Deborah S. Hunt<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed: December 18, 2017

Mr. Howard Hertz
Hertz Schram, 1760 S. Telegraph Road, Suite 300
Bloomfield Hills, MI 48302

Mr. Paul D. Hudson
Miller Canfield
277 S. Rose Street
Suite 5000
Kalamazoo, MI 49007

Mr. Daniel S. Korobkin
Mr. Michael Jay Steinberg
American Civil Liberties Union Of Michigan
2966 Woodward Avenue
Detroit, MI 48201

Ms. Emily C. Palacios
Miller, Canfield, Paddock & Stone
101 N. Main Street, Seventh Floor
Ann Arbor, MI 48104

Ms. Lindsey Powell
Mr. Michael S. Raab
U.S. Department of Justice
Commercial Litigation-Civil Division
1100 L Street, N.W., 8th Floor
Washington, DC 20530

 Re: Case No. 16-2440, *Mark Parsons, et al v. DOJ, et al*
     Originating Case No. : 2:14-cv-10071

Dear Counsel,

   The court today announced its decision in the above-styled case.

    Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

                                       Yours very truly,

                                       Deborah S. Hunt, Clerk

                                     Cathryn Lovely
                                     Deputy Clerk

cc:  Mr. David J. Weaver

Enclosures

Mandate to issue.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 17a0284p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

MARK PARSONS; BRANDON BRADLEY; SCOTT GANDY; ROBERT HELLIN; JOSEPH F. BRUCE; JOSEPH W. UTSLER,

   *Plaintiffs-Appellants*,

  *v.*

UNITED STATES DEPARTMENT OF JUSTICE; FEDERAL BUREAU OF INVESTIGATION,

   *Defendants-Appellees*.

No. 16-2440

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:14-cv-10071—Robert H. Cleland, District Judge.

Argued: October 11, 2017

Decided and Filed: December 18, 2017

Before: BOGGS, BATCHELDER, and KETHLEDGE, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Emily C. Palacios, MILLER, CANFIELD, PADDOCK AND STONE, Ann Arbor, Michigan, for Appellants. Lindsey Powell, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees. **ON BRIEF:** Emily C. Palacios, MILLER, CANFIELD, PADDOCK AND STONE, Ann Arbor, Michigan, Michael J. Steinberg, Daniel S. Korobkin, ACLU FUND OF MICHIGAN, Detroit, Michigan, Howard Hertz, HERTZ SCHRAM PC, Bloomfield Hills, Michigan, for Appellants. Lindsey Powell, Michael S. Raab, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees.

---

**OPINION**

---

ALICE M. BATCHELDER, Circuit Judge. Juggalos are fans of the musical group "Insane Clown Posse." In 2011, the National Gang Intelligence Center labeled Juggalos "a loosely-organized hybrid gang." A group of self-identified Juggalos brought Administrative Procedure Act ("APA") claims against the Department of Justice ("DOJ") and Federal Bureau of Investigation ("FBI"), asserting that the gang designation violated their First and Fifth Amendment rights. The district court determined that the gang designation was not a final agency action and dismissed the suit. We agree and affirm.

**I.**

In 2005, Congress directed the Attorney General to "establish a National Gang Intelligence Center [("NGIC")] and gang information database to be housed at and administered by the [FBI] to collect, analyze, and disseminate gang activity information from" various federal agencies and federal, state, and local law enforcement, prosecutors, corrections officers, and jails. Violence Against Women and Department of Justice Reauthorization Act of 2005, Pub. L. 109–162, § 1107, 119 Stat. 2960, 3093–94 (codified at 34 U.S.C. § 41507). Congress also directed NGIC to make the gang-activity information available to federal, state, and local law-enforcement agencies and to submit an annual gang-activity report to Congress. *Id.* NGIC published reports in 2009, 2011, 2013, and 2015.

Insane Clown Posse ("ICP") is a musical group from Farmington Hills, Michigan. The group is known for its elaborate live performances and songs that "often use harsh language and themes." ICP fans call themselves "Juggalos" and demonstrate their affiliation with the group by wearing, obtaining, or displaying distinctive tattoos, art, clothing, symbols, or insignia, including clown face paint and the "hatchetman" logo. Appellants allege that Juggalos associate with each other "to listen to ICP's music, to share ideas surrounding the music, to express their support of or interest in the ideas that ICP expresses through its music, to express their affiliation with ICP and the artists on its record label, and to express their affiliation with one another."

2:14-cv-10071-RHC-PJK Doc # 49 Filed 12/18/17 Pg 5 of 14 Pg ID 587     (5 of 14)
Case: 16-2440 Document: 32 Filed: 12/12/2017 Page: 5

No. 16-2440     *Parsons, et al. v. United States Dep't of Justice, et al.*     Page 3

The current litigation focuses on NGIC's 2011 gang-activity report, which described Juggalos as "a loosely-organized hybrid gang."[1]  Nat'l Gang Intelligence Ctr., 2011 National Gang Threat Assessment Emerging Trends 22 (2011) [hereinafter "2011 NGIC Report" or the "Report"].[2]  The 2011 NGIC Report compiled information from federal, state, and local law-enforcement and corrections agencies, "including information and data provided by the National Drug Intelligence Center (NDIC) and the National Gang Center . . . [and] information retrieved from open source documents and data collected through April 2011." *Id*. at 5.  As relevant here, the 2011 NGIC Report stated that "many Juggalo[] subsets exhibit gang-like behavior and engage in criminal activity and violence." *Id.* at 22.  Although "[m]ost crimes committed by Juggalos are sporadic, disorganized, individualistic," and relatively minor, the 2011 NGIC Report explained that "a small number of Juggalos are forming more organized subsets and engaging in more gang-like criminal activity, such as felony assaults, thefts, robberies, and drug sales." *Id.* at 22–23.  The 2011 NGIC Report further noted that only Arizona, California, Pennsylvania, and Utah recognized Juggalos as a gang, but "law enforcement reporting suggests that Juggalo criminal activity has increased over the past several years and has expanded to several other states." *Id.*

Appellants characterize themselves as Juggalos.[3]  They allege that they do not knowingly affiliate with any criminal gang, but that they have suffered violations of their Fifth Amendment due-process rights and a chill in the exercise of their First Amendment expression and association rights due to the Juggalo gang designation.  Appellants allege that federal, state, and local law-enforcement officials rely on the 2011 NGIC Report to target members of gangs

---

[1] The 2011 NGIC Report described hybrid gangs as "non-traditional gangs with multiple affiliations" that are "difficult to track, identify, and target as they are transient and continuously evolving." Nat'l Gang Intelligence Ctr., 2011 National Gang Threat Assessment Emerging Trends 22 (2011) [hereinafter "2011 NGIC Report"].  The 2011 NGIC Report also explained that hybrid gangs present a "unique challenge to law enforcement because they are adopting national symbols," "gang members often crossover from gang to gang," and they "often escalate their criminal activity in order to gain attention and respect." *Id.*

[2] The 2011 NGIC Report is available on NGIC's website at https://www.fbi.gov/stats-services/publications/2011-national-gang-threat-assessment.

[3] DOJ and FBI have not labeled the individual Appellants as Juggalos, and the individual Appellants are not named in the 2011 NGIC Report.

identified by the DOJ, including Juggalos. Appellants also allege that DOJ and FBI,[4] encourage other government agencies to identify Juggalos using their tattoos, clothing, or other Juggalo insignia. The practical effect of the gang designation, Appellants argue, is that Juggalos are discouraged from associating with each other or publicly expressing their identity because it makes them a target for law-enforcement scrutiny.

Appellants also allege specific instances when third-party government officials relied on the Juggalo gang designation in a manner that violated their First and Fifth Amendment rights. Appellant Mark Parsons runs a small trucking business in Utah called "Juggalo Express LLC," and his semi-truck is decorated with a large hatchetman logo. Parsons alleges that, while he was traveling in Tennessee, a state trooper detained him because, due to the Juggalo gang designation, the trooper suspected him of membership in a criminal gang. Appellant Brandon Bradley alleges that he has been detained and questioned numerous times by California state and local law-enforcement officers because of his Juggalo tattoos and the Juggalo insignia on his clothing. Appellant Scott Gandy alleges that he was informed by an Army recruiting Sergeant that his Juggalo tattoos were considered to be gang related and that he must remove or permanently cover his Juggalo tattoos or the Army would deny his recruitment application. Appellant Robert Hellin is an Army Corporal and has visible Juggalo tattoos. He alleges that his tattoos, as a result of the Juggalo gang designation, place him "in imminent danger of suffering discipline or an involuntary discharge from the Army." Finally, Appellants Joseph Bruce and Joseph Utsler are members of ICP. They allege that, because of the Juggalo gang designation, local law enforcement caused their musical event at the Royal Oak Music Theater in Michigan to be cancelled.[5]

---

[4] Appellants allege that DOJ and FBI are agencies within the meaning of the APA, see 5 U.S.C. § 701(b)(1), and that FBI administers NGIC.

[5] We discuss here only the factual details pertinent to Appellants' arguments on appeal. The various factual allegations regarding individual Appellants are thoroughly detailed in this court's prior opinion. *Parsons v. U.S. Dep't of Justice*, 801 F.3d 701 (6th Cir. 2015).

## II.

Appellants filed an action for declaratory judgment and injunctive relief against DOJ and FBI in 2014, in the United States District Court for the Eastern District of Michigan. They asserted that the Juggalo gang designation in the 2011 NGIC Report violated the APA, 5 U.S.C. § 706(2), because the gang designation was contrary to Appellants' First Amendment rights of freedom of expression and association and Fifth Amendment due-process rights, was arbitrary and capricious, and was made without observance of proper procedure.

The district court initially granted a motion by DOJ and FBI to dismiss the case for lack of standing. We reversed that decision, finding that Appellants had alleged facts sufficient to demonstrate standing to pursue their APA claims against DOJ and FBI. *Parsons v. U.S. Dep't of Justice*, 801 F.3d 701 (6th Cir. 2015). On remand, DOJ and FBI filed a second motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the Juggalo gang designation was not reviewable because it was not a final agency action and was committed to agency discretion by law. The district court granted the motion to dismiss, holding that the Juggalo gang designation was not a final agency action and, even if it was, it was committed to agency discretion by law. Appellants timely appealed the judgment of the district court.

## III.

"[C]hallenge[s] to the availability of judicial review under the APA [are] properly analyzed under Federal Rule of Civil Procedure 12(b)(6) and whether plaintiff has stated a valid claim for relief." *Berry v. U.S. Dep't of Labor*, 832 F.3d 627, 632 (6th Cir. 2016) (citing *Jama v. Dep't of Homeland Sec.*, 760 F.3d 490, 494 n.4 & 495 (6th Cir. 2014)). We review de novo questions of statutory interpretation and a district court's order dismissing a complaint for failure to state a claim. *Id.*

### A.

"[A]gency action," as defined by the APA, "includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). Agency action is subject to judicial review when "made reviewable by

statute" or when it is "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704; *see Berry*, 832 F.3d at 632. "An agency action must generally meet two conditions to be considered 'final' under the APA." *Berry*, 832 F.3d at 633 (citing *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 136 S. Ct. 1807, 1813 (2016)). "First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Hawkes Co.*, 136 S. Ct. at 1813 (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)); *see Berry*, 832 F.3d at 633. To meet this second condition, the challenged agency action "must have a 'sufficiently direct and immediate' impact on the aggrieved party and a 'direct effect on [its] day-to-day business.'" *Berry*, 832 F.3d at 633 (alterations in original) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 152 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977)).

Legal consequences, in particular, must be "direct and appreciable." *Bennett*, 520 U.S. at 178. For example, agency actions that expose an individual to criminal or civil liability cause legal consequences. *See, e.g.*, *Sackett v. Envtl. Prot. Agency*, 566 U.S. 120, 126 (2012) (finding that legal consequences flowed from the issuance of an EPA order because it exposed appellants to double penalties in future enforcement proceedings and severely limited their ability to obtain a fill permit); *Louisiana v. U.S. Army Corps of Engr'rs*, 834 F.3d 574, 583 (5th Cir. 2016) ("Judicially reviewable agency actions normally affect a regulated party's possible legal liability; these consequences tend to expose parties to civil or criminal liability for non-compliance with the agency's view of the law or offer a shelter from liability if the regulated party complies." (citations omitted)). Similarly, agency actions that definitively determine legal rights or obligations result in legal consequences. *See, e.g.*, *Berry*, 832 F.3d at 633–34 (finding that a decision not to reopen a claim for compensation benefits based on new evidence resulted in legal consequences because "it determined [appellant's] ineligibility for compensation despite new evidence"). Or, agency actions that legally bind an agency or prevent other government actors from pursuing a particular course of action cause legal consequences. *See, e.g.*, *Hawkes Co.*, 136 S. Ct. at 1814 (finding that a jurisdictional determination caused legal consequences because a negative determination "binds the two agencies authorized to bring civil enforcement proceedings," creating a safe harbor from such proceedings and "both narrow[ing] the field of

potential plaintiffs and limit[ing] the potential liability a landowner faces for discharging pollutants without a permit"). Other practical results of an agency's action that lack similar immediate and significant effects are not legal consequences. *See Flue-Cured Tobacco Coop. Stabilization Corp. v. U.S. Envtl. Prot. Agency*, 313 F.3d 852, 859–62 (4th Cir. 2002)

As relevant here, harms caused by agency decisions are not legal consequences if they "stem from independent actions taken by third parties." *Id.* at 860. Even if those third parties are government actors relying on an agency report, their actions "are not direct consequences of the [r]eport, but are the product of independent agency decisionmaking." *Id.* "An agency action is not final if it 'does not of itself adversely affect complainant but only affects his rights adversely on the contingency of future administrative action.'" *Jama*, 760 F.3d at 496 (quoting *Rochester Tel. Corp. v. United States*, 307 U.S. 125, 130 (1939)). In *Flue-Cured Tobacco*, 313 F.3d at 860, the Fourth Circuit explained this distinction between legal consequences that flow from an agency report and harms that result from a third-party's reliance on that agency report. In that case, the Fourth Circuit rejected the argument that an EPA report, classifying environmental tobacco smoke as a human carcinogen, was a final agency action because the report "ha[d] no direct regulatory effect," *id.* at 858, and the report's "coercive pressures on third parties" were not legal consequences, *id.* at 859. "[W]hile the Report's persuasive value may lead private groups to impose [report-related] restrictions, these decisions are attributable to independent responses and choices of third parties. The actions and consequences complained of by plaintiffs do not legally flow from the Report . . . ."[6] *Id.* at 861 (internal citations omitted). Harms resulting from a third-party's independent decision to rely upon an agency report, therefore, are not legal consequences of the report itself.

---

[6]Appellants argue that *Flue-Cured Tobacco* is inapposite because the statute authorizing EPA's conduct expressly limited the EPA's authority on this issue to research and reporting. *See* Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499, § 404, 100 Stat. 1613, 1760. This distinction is immaterial. The relevant statute, similar to NGIC's authorizing statute, directed the EPA to "establish a research program," "gather data and information," "coordinate Federal, State, local, and private research and development efforts," and "assess appropriate Federal Government actions." *Id.* § 403, 100 Stat. at 1758–59. Moreover, like Appellants in this case, the *Flue-Cured Tobacco* plaintiffs asserted that the third-parties' discretionary reliance on EPA's research constituted legal consequences. *Flue-Cured Tobacco*, 313 F.3d at 859–60. Therefore, *Flue-Cured Tobacco* is sufficiently similar to the present case to be persuasive.

Reliance on an agency report, without a legal obligation to consider or abide by that report, is instead a practical consequence of a Congressional order to provide information. "[R]epercussions from the dissemination of information designed to provide [an] industry with up-to-date safety recommendations do not convert [a report] into a reviewable rule or sanction." *Indus. Safety Equip. Ass'n v. Envtl. Prot. Agency*, 837 F.2d 1115, 1121 (D.C. Cir. 1988); *see, e.g.*, *Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 732 (D.C. Cir. 2003) (finding that an investigative report recommending voluntary corrective action did not cause legal consequences because "the request for voluntary compliance clearly ha[d] no legally binding effect," and "the agency ha[d] not yet made any determination or issued any order imposing any obligation . . . , denying any right . . . , or fixing any legal relationship" (citations omitted)). "[P]ractical consequences," are "not legal harms that can transform [a] Report[] into a final agency order and trigger our jurisdiction." *Joshi v. Nat'l Transp. Safety Bd.*, 791 F.3d 8, 11–12 (D.C. Cir. 2015).

## B.

In this appeal, Appellants also assert that the Juggalo gang designation is a reviewable "interpretive rule"[7] because, they argue, the harms they suffered due to the actions of government officials were legal consequences of the gang designation.[8] Appellants, however, have failed to demonstrate that the Juggalo gang designation results in legal consequences.

*First*, the Juggalo gang designation does not result in legal consequences because it does not impose liability, determine legal rights or obligations, or mandate, bind, or limit other government actors. As noted above, Congress directed NGIC to "collect, analyze, and disseminate gang activity information," and to submit an annual gang-activity report to Congress. § 1107, 119 Stat. at 3093. That is the extent of NGIC's legal authority. NGIC does not control other agencies or law-enforcement officers, nor are any agencies or law-enforcement

---

[7]DOJ and FBI argue that the Juggalo gang designation does not fit within the APA definition of "agency action" because it was published in an informational report. Because we find that the Juggalo gang designation is not a final agency action, we need not determine whether an informational report can be an agency action.

[8]DOJ and FBI do not dispute that the gang designation represents the consummation of NGIC's deliberative process, and Appellants do not claim that the Juggalo gang designation determines any legal rights or obligations. Therefore, we need only address whether the Juggalo gang designation resulted in legal consequences.

officers required to consider the 2011 NGIC Report on gang-related issues. Instead, the 2011 NGIC Report, as the product of NGIC's task to "collect, analyze, and disseminate," is merely an informational agency report. *Cf. United States v. L.A. & Salt Lake R.R. Co.*, 273 U.S. 299, 309–10 (1927) (finding that a property valuation order was unreviewable because the "so-called order is merely the formal record of conclusions reached after a study of data collected in the course of extensive research conducted by the Commission, through its employees," and "[i]t is the exercise solely of the function of investigation").

Appellants assert that an informational agency report—such as the 2011 NGIC Report—may still *cause* legal consequences, but they identify no case, and we have found none, to support that proposition. And while this circuit has not previously addressed the issue, many courts have rejected the argument that legal consequences flow from an informational report. For example, in *International Brotherhood of Teamsters v. United States Department of Transportation*, 861 F.3d 944, 952 (9th Cir. 2017), the Ninth Circuit rejected the argument that the Federal Motor Carrier Safety Administration ("FMCSA") engaged in final agency action when it issued a report on a new program because "[t]he report had no legal consequences." The Ninth Circuit explained that the report "was the final step in completing the pilot program, clearing the way for the permitting of Mexico-domiciled carriers. But the submission of the report did not change the legal situation, because the FMCSA maintained discretion over whether or not to begin issuing permits to Mexico-domiciled carriers." *Id.* (citation omitted); *see Louisiana*, 834 F.3d at 583 ("The Assistant Secretary's transmission of the 2008 Deauthorization Report thus failed to create any legal consequences for Louisiana and differs significantly from the legal consequences that typify final agency action reviewable under the APA."); *Joshi*, 791 F.3d at 11 (finding that the investigation and probable-cause report regarding an airplane crash did not result in legal consequences because those determinations were "fact-finding proceedings with no formal issues and no adverse parties" used to prevent future accidents and could not be admitted for use in civil litigation (citation omitted)). In the few cases in which the United States Supreme Court has addressed informational reports, it has found that those informational reports are not final agency actions. In *Franklin v. Massachusetts*, 505 U.S. 788, 798 (1992), the Supreme Court held that the Secretary of Commerce's census-data report (which was submitted to the President for later use in reapportionment) was not a final agency action,

because the Secretary's report "carrie[d] no direct consequences for the reapportionment, [and] it serve[d] more like a tentative recommendation than a final and binding determination." *Id.*; *see also Dalton v. Specter*, 511 U.S. 462, 469 (1994) (finding that the Secretary of Defense's base-closure recommendation was not a final agency action, because the report "'carr[ied] no direct consequences' for base closings" (citing *Franklin*, 505 U.S. at 798)). Similarly, legal consequences do not flow from the Juggalo gang designation in the 2011 NGIC Report.

*Second*, the Juggalo gang designation does not result in legal consequences because the harms that Appellants suffered were caused by third parties who discretionarily relied on the gang designation. As the district court explained, each of the harms suffered by Appellants "constitutes a decision to act that rests on the shoulders of others . . . and not the Defendants or the agency action at issue in this case." The government officials who harmed Appellants were not bound by the Juggalo gang designation nor were they required to consider the 2011 NGIC Report. Thus, the government officials' actions are not direct consequences of the Juggalo gang designation in the 2011 NGIC Report, but are the product of their own independent decisionmaking. As noted above, the presumed "coercive pressures [placed] on third parties" by an informational agency report do not qualify as legal consequences. *Flue-Cured Tobacco*, 313 F.3d at 859. The various reputational and personal harms suffered by Appellants in the present case may be the practical consequences of the Juggalo gang designation, but they are not a direct or appreciable legal consequence of the Juggalo gang designation or the 2011 NGIC Report.

Appellants' citations to *United States Army Corps of Engineers v. Hawkes Co.*, 136 S. Ct. at 1815, and *Frozen Food Express v. United States*, 351 U.S. 40 (1956), are unavailing because both cases are factually distinct from the present circumstances. In *Hawkes Co.*, 136 S. Ct. at 1814, the Supreme Court held that the Army Corps of Engineers' jurisdictional determination resulted in legal consequences because a negative determination imposed a legal obligation on two government agencies, preventing those agencies from pursuing enforcement proceedings that they were otherwise authorized to bring, and an affirmative determination represented the denial of a legal safe harbor. By contrast, the Juggalo gang designation does not limit (or compel) action by other government actors and no government officials are required to consider

or abide by the gang designation. The Supreme Court's decision in *Frozen Food Express* is even less helpful to Appellants. In that case, the Supreme Court determined that an Interstate Commerce Commission ("ICC") order listing what "agricultural commodities" were exempt from certain permit requirements was a reviewable agency action because "[t]he 'order' of the Commission warn[ed] every carrier, who d[id] not have authority from the Commission to transport those commodities, that it d[id] so at the risk of incurring criminal penalties." *Frozen Food Express*, 351 U.S. at 43–44. The Juggalo gang designation is not comparable because it has no legal bearing on the imposition of liability. Therefore, contrary to Appellants' rhetorical assertion, the Juggalo gang designation does not similarly "warn" anyone about incurring liability due to his conduct or associations.

Appellants have failed to demonstrate that the Juggalo gang designation causes legal consequences. The Juggalo gang designation, therefore, is not a final agency action, and Appellants' APA claims are not reviewable.[9]

## IV.

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[9]Although NGIC's gang designation is not a final agency action reviewable under the APA, our holding does not foreclose the possibility that Appellants could raise their constitutional claims against the individual officers they complain of through a § 1983 suit.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 16-2440

MARK PARSONS; BRANDON BRADLEY;
SCOTT GANDY; ROBERT HELLIN; JOSEPH F.
BRUCE; JOSEPH W. UTSLER,
    Plaintiffs - Appellants,

v.

UNITED STATES DEPARTMENT OF JUSTICE;
FEDERAL BUREAU OF INVESTIGATION,
    Defendants - Appellees.

**FILED**
Dec 18, 2017
DEBORAH S. HUNT, Clerk

Before: BOGGS, BATCHELDER, and KETHLEDGE, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

Deborah S. Hunt, Clerk